## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TC POWER LTD, a foreign corporation,

      Plaintiff,

v.                                  Case No. 09-13330

                                         Hon. Lawrence P. Zatkoff

GUARDIAN INDUSTRIES CORP., a
foreign corporation, and GUARDIAN
ZOUJAJ INTERNATIONAL FLOAT
GLASS CO., LLC, a limited liability
company,

      Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 28, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Plaintiff's counsel's Motion to Enforce Charging Lien and

Settlement Agreement [dkt 29].  The Motion has been fully briefed.  The Court finds that the facts and

legal arguments are adequately presented in the parties' papers such that the decision process would not

be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1 (f)(2), it is hereby

ORDERED that the Motion be resolved on the briefs submitted.  For the following reasons, Plaintiff's

counsel's Motion is DENIED.

## II.  BACKGROUND

The law firm of McAlpine & Associates ("McAlpine") represented Plaintiff during the pendency

of this action and eventually helped negotiate a Settlement Agreement ("the Agreement") between the

parties.  Consistent with the Agreement and upon the parties' stipulation, the Court entered an Order dismissing this case with prejudice on March 4, 2011.  *See* Dkt. 28.  Although it provided legal services to Plaintiff in connection with the Agreement, McAlpine was not a party to it.

The Agreement required Defendants to pay $90,000 to Plaintiff in exchange for Plaintiff performing certain work for Defendant.  At the behest of McAlpine, the Agreement also included a requirement that the payment be made via separate installments of $10,000 and $80,000, and that the installments be deposited into McAlpine's client trust account opened for Plaintiff.  McAlpine alleges to have made several attempts via telephone and email to ensure that Defendants made the payments to the trust account.  Yet, Defendants nevertheless made the payments directly to Plaintiff.

In or around July 2012, after receiving the settlement amounts from Defendants, Plaintiff filed for bankruptcy in the United Kingdom—before paying McAlpine in full for services rendered in connection with the Settlement Agreement.  McAlpine asserts that, as of the date of this Motion, Plaintiff owed the firm $30,893.76 in outstanding legal fees.  McAlpine subsequently filed the instant Motion seeking to recover the outstanding amount from Defendants.

### III. ANALYSIS

McAlpine asks the Court to compel Defendants to pay Plaintiff's outstanding fees on two distinct grounds, claiming: 1) that it effectuated a charging lien that was violated by Defendants when they made the installment payments directly to Plaintiff; and 2) that it was a third-party beneficiary of the Agreement that could enforce the Agreement against Defendants.  In response, Defendants argue first that the Court need not and should not exercise supplemental jurisdiction over the attorney fee dispute and that, notwithstanding this, McAlpine cannot establish the existence of any charging lien or third-party beneficiary rights that would compel Defendant to pay McAlpine's fees.  As further discussed below, the Court agrees with Defendants and finds that it need not and should not exercise jurisdiction in this case.

In *Kalyawongsa v. Moffett*, 105 F.3d 283 (6th Cir.1997), the Sixth Circuit addressed the issue of whether a court has jurisdiction over attorney fee disputes arising out of the main action before that court:

> Lawyers are officers of the court. Their fees are part of the overall costs of the underlying litigation. Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation. Unlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues. Considerations of judicial economy are at stake. Thus, we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it *requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.* The fact that the district court here incorporated the fee awards into the judgment by essentially perfecting a lien which it had the power to declare does not change this jurisdictional analysis.

105 F.3d at 287–88 (emphasis added).

Based on the above portion of *Kalyawongsa*, McAlpine argues that the Court is *required* to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any attorney fee controversy that is related to the main action. The Court finds, however, that such a reading is too strict and is at odds with traditional notions of supplemental jurisdiction that grant the district courts *discretion* in exercising jurisdiction.

First, as noted by at least two cases in this district, it is questionable whether the Sixth Circuit used the word "requires" in *Kalyawongsa* to mean that a district court *must* exercise jurisdiction over any attorney fee dispute where that dispute is related to the main action. *See Fairlane Car Wash, Inc. v. Knight Enterprises, Inc.*, 07-10165, 2011 WL 164108 at *2–3 (E.D. Mich. Jan. 19, 2011); *United States v. Four Hundred Seventy Seven (477) Firearms*, 09-CV-10463, 2011 WL 4062378 at * 2–3 (E.D. Mich. Sept. 13, 2011). In this regard, it is notable that the *Kalyawongsa* court looked to prior decisions by the Second, Third, Ninth, and Tenth Circuits. *Kalyawongsa*, 105 F.3d at 286–87. These cases—comprising the foundation of the court's decision—used permissive language to describe district courts' authority to exercise supplemental jurisdiction in attorney fee disputes. *See Cluett, Peabody & Co. v. CPC*

3

*Acquisition Co.,* 863 F.2d 251, 256 (2d Cir.1988) ("[i]t is well settled that a federal court *may, in its discretion,* exercise ancillary jurisdiction to hear fee disputes between litigants and their attorneys when the dispute relates to the main action.")  (emphasis added) (quotations omitted); *Curry v. Del Priore,* 941 F.2d 730 (9th Cir.1991) ("fee disputes arising from litigation pending before a district court fall within that court's ancillary jurisdiction. Ancillary jurisdiction *permits* courts to adjudicate matters . . . [that] affect the court's ability either to render an efficacious judgment or to control the litigation before it.") (emphasis added); *Jenkins v. Weinshienk,* 670 F.2d 915 (10th Cir.1982) ("[a]ncillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety.  Incident to the disposition of the principal issues before it, a court *may* decide collateral matters necessary to render complete justice.") (emphasis added).  The *Kalyawongsa* court itself even acknowledged and endorsed the permissive tone of these other rulings, noting that "other circuits have *allowed* supplemental jurisdiction over attorneys' fees disputes[,]" and that the "reasoning of [these] Circuits [was] sound." *Kalyawongsa,* 105 F.3d at 286–87 (emphasis added).

The *Kalyawongsa* court's express approval of the cited cases suggests that the court had no intention of radically expanding the holdings it relied on—not to mention supplemental jurisdiction in general—by *requiring* rather than *permitting* jurisdiction in the context of fee disputes.  Indeed, "[t]o superimpose a *mandatory obligation* for the adjudication of legal fee disputes—and only legal fee disputes—against several decades of law explaining the *discretionary* exercise of jurisdiction would constitute far more than a mere deviation; it would simply read 'discretionary' out." *477 Firearms,* 2011 WL 4062378 at *3 (emphasis added).

Yet, even assuming the Sixth Circuit fully intended to oblige district courts to exercise jurisdiction over "fee disputes that are related to the main action," the Court need not do so here because the fee dispute in this case is not sufficiently "related to the main action." *See Stubblefield v. Truck Stops*

4

*Corp. of America,* No. 96–5800, 1997 WL 397240 (6th Cir. July 10, 1997) (noting that the fee dispute in question was less a part of the same "case or controversy" than was the dispute in *Kalyawongsa* and thus indicating that the privity between the fee dispute and the underlying action is a factor that weighs on the court's jurisdiction). McAlpine's claim is both distinguishable and more attenuated than were the attorneys' claims in *Stubblefield, Kalywawongsa,* or any other case McAlpine cites. In those cases, the attorney sought to recover fees from his client, based on written contracts that existed before the case began and the terms of which were largely undisputed. Conversely, in this case, McAlpine is seeking to recover fees from *Defendants,* based not on any written agreement with Defendants, but instead on claims of having a charging lien and/or third-party beneficiary rights in the Settlement Agreement. These claims, however, did not merely arise after the case began but, rather, *after the case settled.* Moreover, the parties are in dispute over several key issues pertaining to McAlpine's theories such as: the meaning of the terms of the Settlement Agreement; whether McAlpine ever effectuated a charging lien; whether McAlpine is a third-party beneficiary of the Settlement Agreement dispute; and whether McAlpine has standing to raise its claims. In regard to the underlying breach of contract action, these issues are simply too tenuous as they involve legal and factual determinations that are separate and distinct from those in the underlying claims. Such novel and complex issues of state law would be more appropriately adjudicated by the state courts. *See* 28 U.S.C. § 1367(c)(1).

Last, the *Kalyawongsa* court noted that judicial economy is the underlying interest served by exercising supplemental jurisdiction over fee disputes because "a federal judge who has presided over a case is already familiar with the relevant facts and legal issues." *Id.* In this case, however, judicial economy weighs against the exercise of jurisdiction. While the Court is familiar with the dismissed breach of contract action between Plaintiff and Defendants, the Court is as familiar (or unfamiliar) as a state court would be in regard to the facts and legal issues vital to the charging lien/ third-party beneficiary

theories.  And, as noted above, McAlpine and Defendants disagree over a number of these issues (*i.e.*, whether Defendants had notice of the purported charging lien; how and to what extent the terms of the Settlement Agreement should be interpreted).  Determination of these issues would involve fact-finding and conclusions of law separate and distinct from the underlying action, which would turn McAlpine's Motion into a "case within a case."  Accordingly, judicial economy and comity are better served by allowing a Michigan court to make the determinations of Michigan law required to resolve McAlpine's claims.

## V.  CONCLUSION

Accordingly, for the above stated reasons, IT IS HEREBY ORDERED that McAlpine's Motion to Enforce Charging Lien and Settlement Agreement [dkt 29] is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT JUDGE

Dated:  August 28, 2013